**WHITE PACKING CO. v. ROBERTSON.**

No. 4130.

Circuit Court of Appeals, Fourth Circuit.

April 6, 1937.

776

Richard B. Barker, of Washington, D. C. (Walter H. Woodson and Stahle Linn, both of Salisbury, N. C., and Ivins, Phillips, Graves & Barker, of Washington, D. C., on the brief), for appellant.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order dismissing a suit instituted to enjoin the collector of internal revenue for the North Carolina district from proceeding under title III of the Revenue Act of 1936 (26 U.S.C.A. §§ 345–345e) to collect from plaintiff the so-called "windfall" tax imposed by that title, from filing a return for plaintiff with respect to such tax, from imposing penalties on plaintiff, or from taking other action against plaintiff thereunder. Relief was asked in the bill on the ground that the statute imposing the tax was invalid because both the tax itself and the method provided for its computation were violative of provisions of the Federal Constitution. A second cause of action asked the aid of the court in determining the amount of the tax, if it should be held valid, on the ground that alternative methods of return provided in the act left the plaintiff in doubt as to which method to adopt and that this doubt could not be resolved in the absence of an audit which would require a greater length of time than allowed by the act for a return.

The plaintiff in the court below was the White Packing Company of Salisbury, N. C., a small meat packing concern, which as a processor of hogs was subject to the processing· tax imposed by the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, see 7 U.S.C.A. § 601 et seq. The bill alleged that between July 11, 1935, and January 16, 1936, plaintiff paid into the registry of the court in a suit in which the collection of the processing tax had been enjoined a total of $34,190.49, which was paid back to it when that tax was declared unconstitutional by the Supreme Court. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. In this court it is stated by plaintiff that there was an additional amount of processing taxes, not paid into the registry of the court, for which it would have been liable for the year 1935 under the terms of Agricultural Adjustment Act, amounting to $11,286.66.

■ The motion to dismiss in the court below was based upon three grounds: (1) That the suit was forbidden by Rev.St. 3224 (26 U.S.C.A. § 1543); (2) that the bill failed to allege facts sufficient to entitle plaintiff to equitable relief; and (3) that plaintiff had an adequate remedy at law. The District Judge sustained the motion on the first and third grounds and stated, in addition, that the bill failed to show that complainant was liable for any tax and for that reason was deficient in failing to show threat of injury. See (D. C.) 17 F.Supp. 120. In view of his holdings with respect to these matters, he properly declined to consider or pass upon the constitutionality of the taxing statute. Huston v. Iowa Soap Co. (C.C.A.8th) 85 F.(2d) 649, 652. We think that his holdings were unquestionably correct on the record before him and that nothing need be added to the discussion of the questions there involved which is contained in his opinion. A like conclusion was reached by the Circuit Court of Appeals of the Tenth Circuit in Sheridan Flouring Mills v. Cassidy, 87 F.(2d) 20, and of the Fifth Circuit in Steinhagen Rice Milling Co. v. Scofield et al. (C.C.A.5th) 87 F.(2d) 804, by Judge Chesnut in Star Milling Co. v. Magruder,[1] by Judge Hamilton in Louisville Provision Co. v. Glenn (D.C.) 18 F. Supp. 423, 432, and by Judge Yankwich in Union Packing Co. v. Rogan (D.C.) 17 F.Supp. 934.

■ In this court complainant has filed a motion, supported by affidavits, asking that the cause be remanded with direction to the District Judge to permit an amendment to its bill to show the facts set forth in the affidavits. From these it appears that the cost of preparing a return under the statute will be between $7,500 and $10,000, owing to the fact that plaintiff has not kept its sales of pork segregated from its other business, and the compilation of the information necessary for the making of a proper return will necessitate the examination and analysis of 600,000 or 650,000 invoices. It is further alleged in these affidavits that plaintiff is a small concern in urgent need of additional capital, and that to withdraw from its funds the amounts necessary to make the payment under protest, as basis of suit for recovery, of the taxes which would be assessed against it on the basis of its liability for processing taxes would result in its financial ruin. It is argued that payment under protest and suit for recovery will not afford an adequate remedy at law, for the reason that there would be no means of recovering the expenditure of $7,500 to $10,000 necessary for the making of a return and that this, together with the hardship involved in what, it is alleged, would be a ruinous withdrawal of capital for the purpose of making the payment, brings the case within the principle of Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422.

A sufficient reason for denying the motion to remand would be that we are not impressed with the contention that any such expenditure as is alleged would be necessary for the making of a return, or that irreparable injury would result from the payment under protest of the tax shown thereby to be due. All that the law requires is that the return be made in good faith with the giving of such information as is reasonably available. As records must have been kept for the payment of the processing tax, it is clear that the taxpayer has readily available records from which with little difficulty or expense a good part of the information necessary for the tax return can be obtained. Officials of taxpayer, from their knowledge of the business, can supply, no doubt, an approximately correct estimate as to the remaining items. And, if the Commissioner is not satisfied with the return so filed, it is the government and not the taxpayer that will have the burden of auditing the invoices. Union Packing Co. v. Rogan, supra; Louisville Provision Co. v. Glenn, supra. As to the withdrawal of capital from business, it appears that the tax cannot exceed 80 per cent. of the processing tax and that approximately that portion of the processing tax had already been paid into court by plaintiff and returned to it shortly before the passage of the statute here involved. If the processing tax was passed on to the customer so that the amount impounded was clear profit to plaintiff when returned to him, it is futile to argue that the business will be ruined by the withdrawal of such amount. If, on the other hand, plaintiff bore the burden of the processing tax and did not pass it on, there should be little difficulty in showing this (United States v. Jefferson Electric Co., 291 U.S.

---

[1] No opinion for publication.

386, 402, 54 S.Ct. 443, 449, 78 L.Ed. 859) and certainly plaintiff's return would show it and no tax would be payable. In other words, only to the extent of 80 per cent. of the processing tax passed on by the processor is the windfall tax imposed; the return of plaintiff will presumably not show any greater taxable income than in reality existed; and the payment of the tax so shown to be due cannot result in irreparable injury to the business of plaintiff as it must be paid from profits recently received, and not from working capital.

■ A court of equity, of course, cannot entertain such plea of irreparable injury as plaintiff attempts to base on the need of business expansion.

■ But a conclusive reason for denying the motion is that we are satisfied that the statute is constitutional, and that no purpose would be served by remanding the cause, in order that the adequacy of the remedy at law might be determined in the light of the additional facts shown by the affidavits, when we are of opinion that in any event the order dismissing the bill should be affirmed. The question as to the constitutionality of the statute and the adequacy of the legal remedy both go to the sufficiency of the bill; and the case should not be remanded for additional findings with respect to one ground of dismissal when the dismissal is clearly correct on another ground. It is well settled that where it appears from the record that the court has done the right thing, its action will not be reversed because based upon the wrong ground. Act Feb. 26, 1919, 28 U.S.C.A. § 391. Indiana Farmer's Guide Pub. Co. v. Prairie Co., 293 U.S. 268, 281, 55 S.Ct. 182, 186, 79 L.Ed. 356; United States v. Holt Bank, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465; Aberly v. Craven County (C.C.A.4th) 70 F.(2d) 52, 54; Great American Ins. Co. v. Johnson (C.C.A.4th) 25 F.(2d) 847; City of St. Paul v. Certain Lands (C.C.A.8th) 48 F.(2d) 805; Ramsay v. Crevlin (C.C.A.8th) 254 F. 813; Brown v. Lane Cotton Mills Co. (C.C.A.5th) 28 F.(2d) 911. A fortiori, a dismissal should not be reversed and the case remanded for further hearing with respect to the ground assigned, when it appears from the face of the bill that complainant is entitled to no relief whatever. It would be absurd to prolong litigation for the purpose of determining whether or not the legal remedy is adequate, when it is apparent from the face of the bill itself that plaintiff is not threatened with wrong entitling him to a remedy of any sort because the only statute of which complaint is made is constitutional.

The statute which is attacked is title III of the Revenue Act of 1936, 26 U.S.C. A. § 345 et seq., imposing the "windfall" tax of 80 per cent. on income of a taxpayer which has arisen because he has shifted to others the burden of processing taxes imposed upon him and has been relieved of the payment of the taxes. Its purpose was to tax at a high rate the profit which had been realized by processors as a result of the rise in prices due to the imposition of taxes by the Agricultural Adjustment Act of May 12, 1933, which was held invalid in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. The taxes were imposed on three classes of persons, (1) processors who had shifted the burden of the tax without paying it, (2) vendees of processors who had shifted the burden of the tax and been reimbursed for the amount of the tax by their vendors, and (3) processors who after paying the taxes and shifting the burden thereof had obtained a refund of the taxes so paid. As plaintiff falls within the first class, only the provisions of the statute relating to that class need be considered. The provision imposing the tax on that class is as follows:

"A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed." Revenue Act of 1936, title III, § 501 (a) (1), 26 U.S.C.A. § 345 (a) (1).

The taxing statute is attacked on four distinct grounds: (1) That it is an attempt to nullify the decision in Butler v. United States, supra, and the rights vested in plaintiff under that decision; (2) that it makes arbitrary and unreasonable classification with respect to the income taxed; (3) that it imposes a retroactive penalty or at best a retroactive excise tax; and (4) that it is arbitrary and unreasonable with respect to the basis of imposition and the return required of the taxpayer.

■ As to the first of these grounds of attack, it is to be noted that the tax is imposed, not upon the tax retained by the processor, but upon the income which he has realized by passing on the tax which he was required by statute to pay but did not pay. If he has realized no net income as a result of the business upon which the processing tax was imposed, he is not liable for the windfall tax although he would have been liable for the processing tax. Section 501 (c) (1, 2), 26 U.S.C.A. § 345 (c) (1, 2). And only the net income derived from the business upon which the processing tax was imposed is taxable, even though the processing tax may have exceeded the net income. The windfall tax is based upon the theory that the processing tax imposed by the act would increase the prices of the taxed product by the amount of the tax; and the graph prepared by the U. S. Department of Agriculture and published as Exhibit B of the government's brief shows that the spread in prices due to the imposition of the tax corresponded to the amount of the tax and was practically uniform during the time that it was in force. This increase in prices resulted in an abnormal increase in profits for the processors when they were relieved from the payment of the tax which had resulted in the increase. It is not unreasonable that the government should impose a special tax, and a heavy tax, upon this abnormal profit which had its origin in governmental action. It was upon this theory that the excess·profits tax of October 3, 1917, 40 Stat. 302, was imposed. La Belle Iron Works v. United States, 256 U.S. 377, 387, 41 S.Ct. 528, 530, 65 L.Ed. 998.

The holding of the Butler Case was that the processing tax was invalid because not a tax at all but a mere step in a plan for the regulation of agriculture beyond the powers of Congress. The "windfall" tax, on the other hand, is not a step in any plan of unconstitutional regulation of agriculture or industry, but a tax in the strictest sense of the word, imposed for the purpose of meeting an anticipated deficit in the budget due to the passage of the Soldiers Bonus Bill (38 U.S.C.A. §§ 686–688b) and the invalidation of the processing taxes. There is nothing in the act to indicate that the revenue to be derived from it is to go into any fund other than the general fund of the government or to be used in any way other than the proceeds of other lawful taxes. Kingan & Co. v. Smith (D.C.) 17 F.Supp. 217, 221; Union Packing Co. v. Rogan (D.C.) 17 F.Supp. 934.

■ Coming to the second ground of objection, i. e., that the statute makes an unreasonable classification with respect to the income taxed, it is clear that the tax is imposed only on income derived from a particular source, i. e., from the shifting of processing taxes to others in the sale of products without paying the taxes. It is no basis of objection to the tax that income of this peculiar and abnormal kind should be singled out for special treatment, as were profits from war contracts in R. Hoe & Co. v. Com'r of Internal Revenue (C.C. A.2d) 30 F.(2d) 630. A wide discretion must be accorded the legislative authority in the matter of classifying for purposes of taxation. State Board of Tax Commissioners v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464; Flint v. Stone Tracy Co., 220 U.S. 107, 158, 159, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312. And the motives of Congress in levying a tax within its constitutional power will not be inquired into if it is in reality a tax, as is the case here. McCray v. United States, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78, 1 Ann.Cas. 561. And classification in the imposition of the tax will be upheld if any state of facts reasonably can be conceived to sustain it. State Board of Tax Commissioners v. Jackson, supra; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A. 1917A, 421, Ann.Cas.1917B, 455.

■ The third ground of attack is that the statute is void because retroactive, and is a mere penalty or at best a retroactive excise tax. The argument that the tax is a mere penalty, imposed for the punishment of those who have contested the processing tax act, is sufficiently answered by what has already been said. The fact that the rate of taxation is high does not make the tax a penalty or render it invalid; for where the power to tax exists, the extent of the burden is a matter for the discretion of the legislative body. Fox v. Standard Oil Co. of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780; Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109; Kingan & Co. v. Smith, supra. The tax is, of course, an excise tax, as are all taxes on income, but it is not rendered void on that account because it is retroactive. On the contrary, the validity of statutes

imposing income taxes retroactively is well settled. United States v. Hudson, 57 S.Ct. 309, 310, 81 L.Ed. ——; Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; Brushaber v. Union Pac. R. Co., 240 U.S. 1, 20, 36 S.Ct. 236, 60 L. Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713; Stockdale v. Atlantic Ins. Co., 20 Wall. 323, 331, 22 L.Ed. 348; Milliken et al. v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809; Osburn California Corporation v. Welch (C.C.A.9th) 39 F.(2d) 41, 43. As said in the case last cited, "Many past revenue acts have been made retroactive, as will appear from the long list of cases cited in the dissenting opinion of Mr. Justice Brandeis in Untermyer v. Anderson, 276 U.S. 440, 447, 48 S.Ct. 353, 72 L. Ed. 645, and in many of the cases thus cited the retroactive provisions of the acts under consideration worked far greater injustice to the complaining parties than is the case here."

The tax here imposed is not like an estate tax imposed upon a transfer made many years before or a gift tax upon a gift already consummated, as was the case of the taxes considered in Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081, and Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645. Such taxes may well be said to violate the requirement of due process. Here the tax is imposed on income which has recently been earned and which, if the taxpayer has complied with the law, has either been paid to the government under an unconstitutional statute or paid into the registry of a court pending the determination of the validity of same, and which for practical purposes has come into the possession of the taxpayer during the year in which the tax is imposed. The maximum period of retroactivity under the statute is sixteen months; and this covers a period as to which there will necessarily be readjustments of income as a result of the decision in the case of United States v. Butler, supra. As said by Judge Hamilton in Louisville Provision Co. v. Glenn, supra, we think that "the period of applicability of the act had a sensible connection with the determination of income." We recognize no principle involved in the concept of due process which forbids the taxing of such income. On the contrary, we think the case falls squarely within the principle of United States v. Hudson, supra, in which the Supreme Court, speaking through Mr. Justice Van Devanter, said:

"As respects income tax statutes, it long has been the practice of Congress to make them retroactive for relatively short periods so as to include profits from transactions consummated while the statute was in process of enactment, or within so much of the calendar year as preceded the enactment; and repeated decisions of this Court have recognized this practice and sustained it as consistent with the due process of law clause of the Constitution."

On the fourth point, the argument is that the tax is violative of the due process clause of the Fifth Amendment "because its fundamental structure is based upon a hypothesis that is arbitrary and capricious," in that it is said there is no basis for the presumption, created by section 501 (e) (1, 2) (26 U.S.C.A. § 345 (e) (1, 2), that the tax has been passed on because the marginal spread between cost and selling price exceeds the average marginal spread, as determined by section 501 (f) (1), 26 U.S.C.A. § 345 (f) (1), during the preceding six-year period. It is to be noted, however, that the statute limits the taxable income to net income. Section 501 (a) (1), (c) (1, 2), 26 U.S.C.A. § 345 (a) (1), (c) (1, 2). And Congress might classify net income derived from the branches of production to which the processing tax had been applied without providing for the deduction of the average margin, or without reference to whether the tax had been shifted or not. The allowance of the deduction, therefore, could not invalidate the tax on net income, even though, as claimed, it bore no relation to the shifting of the tax.

But we do not think that the presumption created by the statute is an arbitrary or capricious one. While a theoretical argument can be made that the excess by which the margin of profit exceeds the average margin over the six-year period represents other elements than the shifting of the tax burden, the method provided by the statute is nearly enough accurate for purposes of taxation, where theoretical accuracy is not required. It certainly cannot be said to be without relation to the fact presumed; for it is safe to say that the processor has shifted to his customers a tax entering into the element of cost in so far as it was possible to shift it. The processor

is protected from any injustice in the matter not only by the provisons which limit the taxable income to net income, but also by a provision limiting it to the amount of the processing tax paid, less certain deductions, section 501 (e) (3), 26 U.S.C.A. § 345 (e) (3), and by a provision that the presumption may be rebutted by proof of the actual extent to which the burden has been shifted, section 501 (i), 26 U.S.C.A. § 345 (i). As said in United States v. Jefferson Electric Co., 291 U.S. 386, 402, 54 S.Ct. 443, 449, 78 L.Ed. 859, "If the taxpayer has borne the burden of the tax, he readily can show it." Any difficulty arising out of the fact that books have not been kept with the tax in view is met by what we have said above with regard to the return, i. e., all that is required of the taxpayer is that the return be made in good faith with the giving of such information as is reasonably available and with the right on the part of the government to check the return by an examination of taxpayer's books and records.

Little need be said as to the second cause of action asking an injunction and accounting, upon the assumption that the taxing act is valid, in order that a basis may be determined for the making of a return. It is well settled that "mere complication of facts alone and difficulty of proof are not a basis of equity jurisdiction." Curriden v. Middleton, 232 U.S. 633, 636, 34 S.Ct. 458, 459, 58 L.Ed. 765; United States v. Bitter Root Development Co., 200 U.S. 451, 472, 26 S.Ct. 318, 50 L. Ed. 550; Broderick v. American General Corporation (C.C.A.4th) 71 F.(2d) 864, 868, 94 A.L.R. 1359. And certainly, the courts of equity of the United States will not take upon themselves the determination of a basis for tax assessment when Congress has provided elaborate administrative machinery for that purpose. That the courts, in face of the prohibition contained in Rev.St. § 3224, 26 U.S.C.A. § 1543, should enjoin the collection of a tax and order an accounting that a taxpayer may determine upon what basis to make a tax return, is a proposition so much at variance with the principles upon which equity jurisdiction is exercised as not to require discussion. No authority is cited remotely justifying such procedure in tax matters, and we know of none.

The court below refused to grant a restraining order, but upon application to this court we granted such order and have ex-

tended it to protect plaintiff until the issuance of our mandate. As we feel that we should not interfere with the collection of a tax which we have held to be constitutional to any greater extent than is necessary to enable plaintiff to secure an adjudication of its rights, mandate will issue in accordance with our rules thirty days after the handing down of this opinion, but will not be further stayed unless in the meantime plaintiff shall have filed with the Supreme Court an application for writ of certiorari to review our decision.

For the reasons stated, the order dismissing the bill will be affirmed.

Affirmed.